## THE MAYOR AND COUNCIL OF WILMINGTON *vs.* PETER HORN.

A surety in the official bond of an officer whose appointment is annual, is not liable beyond the year, though the officer continues by law until a successor is appointed.
A surety is never bound beyond the principal; and the liability is governed by the terms of the bond and the understanding of the parties at the time of entering into it. The liability of a surety is to be taken strictly.

DEBT on a constable's bond. Narr. Demurrer. Case stated.

On the first Tuesday of March, 1832, John Rudolph was elected high constable of the city of Wilmington, and entered into bond, dated 26th April, 1832, with Peter Horn, the defendant, and others his sureties to the "mayor and council of Wilmington," with condition—" That if the above bounden John Rudolph shall and do well and truly perform all the duties required of and incumbent on him as high constable, for the city of Wilmington, agreeably to his appointment, and in conformity with the existing laws of the state, or as may be established by ordinance of the city aforesaid; and shall perform the trust committed to him with fidelity; and shall well and truly pay over all monies which may come into his hands as high constable aforesaid; then the above obligation to be void, or else to be and remain in full force and virtue in law."

The city council omitted to elect a high constable on the third Tuesday of October, 1832; and Rudolph continued to hold the office, and perform the duties of high constable, until the election of another person as high constable in October, 1833. The default for which his bond was sued occurred after the first Tuesday of Octo-

ber, 1832; and the question was, whether the defendant as his surety was liable.

*Bayard,* for defendant:

The charter of the city was passed in January, 1832.   Section 14 directs a special election for members of council to be held on the first Tuesday of March, 1832; and directs that "immediately after the said election, the said members of council shall proceed to elect a mayor, an alderman, a high constable, and such other officers as they shall deem necessary," &c.   In pursuance of this section, Rudolph was elected, and entered into bond.

Sec. 4 enacts, that " the high constable shall be elected annually, on the first Tuesday of October, by the city council."

The city council did not elect a high constable on the first Tuesday of October, 1832, and Rudolph continued in office under the provisions of sec. 12, which enacts " that in case it should happen that the election day should pass over without an election being held, or in case of the omission of the execution of any authority delegated by this act, the powers of this corporation shall not cease, but the authority of each and every of the officers thereof shall continue until a new election can be legally held."

We contend that though the corporation was saved by this section from being dissolved by a failure to elect officers at the proper time, and the *authority* of the old officers was continued, yet this could not extend the obligation of their official bond beyond the period for which it was originally given.   And this is so more especially in relation to a surety.   His undertaking is in reference to the time for which the high constable was appointed; and it should not lie in the power of councils, by their act or neglect, to enlarge or extend the surety's liability.   If they could do so one year, they might indefinitely.

*Wales,* for plaintiff:

The question is simply, what is the obligation of the sureties on this bond.   It is not that they shall answer for the acts of the constable for one term, or one year; but that he shall faithfully perform all the duties, agreeably to his appointment under the charter.   The law fixes a time for the election; but it equally provides that, in case the appointment of any officer is not superceded by the election of another, it shall continue beyond that time.   The obligation is assumed by the surety as much in reference to this provision as any other part of the law; it becomes a part of the condition of the bond; and, if the official existence of the officer is continued, his official obligation and that of his sureties equally continue.   Otherwise, they

are not responsible for the faithful performance of *all* his duties, agreeably to his appointment. The appointment is not in my view for one year, but for one year and until another shall be duly appointed. 3 *Maule & Selw.* 502; *Curling et al.* vs. *Chalklen et al.* It cannot be questioned that Rudolph was the lawful officer until another election took place, and was bound to perform his duties as such; there is no limitation or restriction in the condition of his bond, and if he is bound beyond the period fixed by the law for another election, his sureties are equally bound. 9 *Law Library,* 57, (109, &c.)

*Bayard,* in reply:

The principle of the case cited from *Maule & Selwyn,* I think, decides this case according to the position I am contending for. The charter of the city of Wilmington makes this expressly an annual office. The case cited is that of an indefinite office, held during pleasure. And that is the distinction. Could the council elect a high constable for a longer period than one year? Would not such an appointment be illegal? If they could not appoint for a longer period, they could not take a bond for a longer period, nor could any subsequent act or neglect extend the obligation of the bond, or enlarge the liabilities of the sureties under it. The continuance of the official existence of the officer neither alters the character of his original appointment, nor affects the responsibility of his sureties. *Miller* vs. *Stewart et al.,* 9 *Wheat. Rep.* 680.

*By the Court.*

HARRINGTON, *Justice.*—The question presented by the demurrer and argument of this case is, whether the defendant, as one of the sureties of John Rudolph, in his official bond as high constable of the city of Wilmington, is bound for the defaults of that officer arising after the year in which the bond was executed. The bond bears date the 26th of April, 1832, and is conditioned for the faithful performance by Rudolph of "all the duties required of and incumbent on him as high constable for the city of Wilmington, agreeably to his appointment, and in conformity with the existing laws of the state," &c.

The city charter authorizes the election of a mayor, alderman, a city council, high constable, treasurer and assessor; the council treasurer and assessor to be elected *annually* by the citizens on the first Tuesday of October; the mayor, alderman, and high constable, to be elected by the city council, the mayor for *three,* the alderman for *five,* and the high constable for *one* year. The first election of a city council under the charter took place, by the special provision of the 14th section of the act, on the first Tuesday of March, 1832, at which time the term of the high constable then in office terminated;

and the act directs that the council shall proceed immediately after the said election, to elect a high constable, &c. In pursuance of this direction, Rudolph was elected ; and, on the 26th April, executed this bond.

Without looking further into the charter, it is plain that the term for which Rudolph was elected was only until the third Tuesday of October following, on which day in *each year* the fourth section re-quires that the high constable shall be elected ; and it is equally plain that a bond conditioned, as this is, for the performance of all the duties incumbent on this officer *agreeably to his appointment*, could not extend the obligation of the surety beyond this period. If this were the extent of the defendant's obligation when it was entered into, could any act or omission of any other person, or indeed any subsequent matter, enlarge the condition and extend the obligation ? It is contended by the plaintiff's counsel, that the failure or omission of the city council to elect at the next annual period, has this effect, because it is said that in such case the charter under and in reference to which the bond was given, continues all the power and authority and also the obligations of the high constable.

The section referred to enacts, " that in case it should happen that the election day should pass over without an election being held, or in case of the omission of the execution of any authority delegated by this act, the powers of the corporation shall not cease, but the authority of each and every the officers thereof shall continue until a new election can be legally held." The election day referred to is probably the first Tuesday in October, the day of general election by the citizens of a city council and other officers, and not the time of election by the council of a high constable ; and the purpose of the provision is stated to be to prevent the disfranchisement of the corporation, which could certainly not occur by the mere neglect to appoint a constable. But, supposing that it extends to either election day, and embraces the case of an omission to elect a constable, does such an omission continue not only the existence and authority of the officer, which the law provides it shall do, but also continue his *obligations* and extend the liabilities not merely of himself but of his *surety*, which the law does not at least in its terms declare that it shall do ?

A surety is in no case bound beyond the extent of the principal, and the liability of both is measured by the terms of the bond and the condition of things in contemplation of the parties at the time of entering into the obligation. *Theobald, Prin. and Surety*, 66. The liability cannot be extended beyond the terms of the obligation. Thus, before our act of assembly, it was held by the courts that the

condition of an administrator's bond did not cover the proceeds of sale of the decedent's lands made by the Orphans' Court for the payment of debts, though such proceeds came into the administrator's hands, and though the law at the execution of the bond contemplated the possibility of such funds coming into his hands. The reason is, that the parties at the execution of the bond contemplated the administration of the *personal* assets of the estate, and this liability cannot be extended, although by the lawful action of the Orphans' Court the land is changed into money and comes into the administrator's hands.

It is another general principle, that if a person is surety for the fidelity of another in an office of limited duration, or the appointment to which is only for a limited period, he is not obliged beyond that period. *Theo. P. and Surety*, 66. Thus, in the case of *The Liverpool Water Works Company* vs. *Harpley*, (6 *East*, 507,) the action was against a surety on a bond reciting that one Atkinson had agreed with the plaintiffs to collect their revenues from time to time for twelve months from the date thereof, and with condition to be void if Atkinson should from time to time annually and at all times thereafter, during the continuance of his employment, account for and pay over, &c. The plaintiffs averred that they continued Atkinson for near three years, and that during that period he had received various sums which he had not paid over. The defendant pleaded that Atkinson had paid over all he received during the first twelve months after the date of the bond, and upon demurrer to this plea the court gave judgment in favor of the defendant; determining that the surety was only bound for the period mentioned in the recital as the duration of Atkinson's appointment.

So in the case of *The United States* vs. *Kirkpatrick et al.*, which was an action on the official bond of a collector appointed by the president in the recess of the senate, under an act of congress authorizing such appointments until the end of the next session; and was conditioned in general terms for the faithful discharge of the collector's duties: it was held not to extend to a renewal of his appointment by the president with the consent and advice of the senate on the meeting of congress. And the court laid stress on the fact, that by the law the first appointment could not be otherwise than for a limited period.

It is true that in both these cases the recital to the bond expressed the termination of the appointment, which in the principal case it does not. But the condition here is for the faithful performance of the duties of high constable *agreeably to his appointment, and in conformity with the existing laws;* referring not only to the terms of the

appointment, but the law under which it was made. But it needed not such reference; the commission, and the law under which it was made, necessarily enter into the obligation in construing its extent, and must be considered by the court. Thus, in *Leadley* vs. *Evans,* (2 *Bing.* 32,) where the condition was, that if Bailey, a collector of poor rates, should from time to time and at all times account to the church wardens and overseers for all sums collected, &c.; the court *took notice* that the collector of poor rates was a deputy of the overseer *whose office was annual,* and restricted the liability of the surety to one year, though the principal continued to be overseer longer.

Where also a bond was taken under an act of parliament, conditioned for the due collection of certain rates and duties *at all times thereafter,* and it did not appear on the record that the collector's appointment was limited, or his office annual, but the act made it annual, the court held that the surety was obliged for a year only. *Peppin* vs. *Cooper,* 2 *B. & A.* 431. It would be difficult to distinguish this case in any respect from the case we have in hand, either in principle or terms, except that the authority cited is stronger in limiting the obligation of the surety.

The case of *Curling* vs. *Chalklen,* 3 *M. & S.* 502, cited by the plaintiff's counsel, does not at all conflict with the principle of these authorities, as the condition of the bond there was *general,* and neither the appointment nor the law under which it was made limited its duration. The case was decided on that distinction. *Lord Ellenborough,* in noticing the argument of counsel that it was an annual office, and, therefore, the obligation of the surety should not be extended beyond the proper period of the office, said, " Certainly, if I saw that it was properly an annual office, I should have been inclined to yield to that argument;" but on examining the act under which the appointment was made, he found nothing to show that the appointment was to have an annual commencement or termination.

The contract of surety is to be construed strictly, and is not to be extended beyond the fair scope of its terms. (*Miller* vs. *Stewart et al.,* 9 *Wheat. R.* 680.) The obligation of this defendant was for the official conduct of Rudolph *agreeably to his appointment,* and in conformity with the existing laws of the state. The office to which Rudolph was appointed is an annual office; the term under which the bond was taken ended on the third Tuesday of October following; and the law made it the duty of the city council to reappoint the officer, or elect another, on that day. The defendant became surety of Rudolph in reference to this law; he was interested in the future action of the council, and had the right to presume that they would do their duty. The omission or neglect on their part, cannot

prejudice him or extend his liability as surety beyond his original obligation on the terms of his bond taken in reference to the existing law. It is true that the law has provided that such neglect shall not disfranchise the corporation, and has continued the *authority* of all officers, including the high constable; but the law did not intend, and it is not just, that in thus saving the corporation from the worst consequences of the neglect of its officers, it should extend the *obligation* of others far beyond its original character.

Judgment for defendant.

*Wales,* for plaintiff.
*J. A. Bayard,* for defendant.